**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Richard Angelino　}
　　　　　　　　　　　　　　　}
　　　　　　　　　　　　　　　}　　Docket No.261-11-02 Vtec
　　　　　　　　　　　　　　　}
　　　　　　　　　　　　　　　}

Decision and Order on Cross-Motions for Summary Judgment

Appellant Richard Angelino appeals from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Underhill, denying his application for a variance from the streambank setback requirements of the Zoning Regulations. Appellant is represented by Donald B. Maddocks, Esq. and the Town is represented by Paul Gillies, Esq.

Appellant= s Statement of Questions, as amended, raised the following five issues: 1) whether the ZBA timely rendered a decision under 24 V.S.A. ' 4470(a); 2) whether the ZBA= s written decision included sufficient findings of fact; 3) whether the definitions of the terms > stream= and > streambank= are sufficiently defined in the Zoning Regulations, and, if so, whether Appellant= s land falls within that definition; 4) whether the answer to the first three questions requires the so-called deemed approval of Appellant= s application under 24 V.S.A. ' 4470(a); and 5) whether the ZBA considered Appellant= s new camp as a replacement of a pre-existing structure which had a septic system installed prior to the adoption of > Septic Regulations= in the Town. We note that Appellant did not challenge the merits of the ZBA= s denial of his variance application; that is, Appellant does not claim that the application in fact meets all five of the criteria for a variance to be granted.

The following facts are undisputed unless otherwise noted. Appellant owns an approximately 15-acre parcel of land located in the Town of Underhill at 40 Downs Road. For the purposes of this decision, we will assume that a sugar house existed on the parcel prior to the adoption of the Zoning Regulations in 1963, and that the sugar house was not used for human habitation prior to the adoption of IX(L)(1) of the Zoning Regulations.

Approximately in 2000 or 2001, Appellant constructed a 12 -story camp (seasonal residential building), on a foundation of concrete piers (sonotubes), connected to a 300-gallon septic tank[1] and approximately 100 feet of leach line, but not served by electricity. The new camp building is located approximately 20 feet from the bank of a watercourse passing through the property. The watercourse only contains water on a seasonal basis. The parties seem to dispute whether Appellant at some time diverted the course of the water flowing through that watercourse, but the issue of diversion is not necessary to the decision of the present appeal. Appellant did not obtain a zoning permit prior to constructing the camp.

Section IX(L)(1) of the Zoning Regulations requires that A no structure for human habitation or septic systems will be permitted within 100 feet of the streambank of any watercourse.@

Reading together the definitions of the terms > stream,= > streambank,= and > watercourse,= all of which are defined in the Zoning Regulations, the term > watercourse= includes A any river, stream, brook, waterway, lake, pond, marsh, swamp, bog, wetland or other body of water, natural or artificial, public or private;@ and includes A any depression two feet or more below the elevation of surrounding land serving to give direction to a current or flow of water having a bed and a well-defined bank.@

After the existence of the camp came to the attention of the zoning authority, on June 26, 2002, Appellant applied for an 80-foot variance from the 100-foot streambank setback of ' IX(L)(1). Appellant did not request a ruling that the camp or its septic system was exempt from ' IX(L)(1) as a pre-existing non-conforming structure or use under ' IX(G) or (H), and did not apply for approval of the ZBA to modify the structure or the use under those sections.

The ZBA held a public hearing on the matter on August 12, 2002, concluded the hearing the same day, and entered into deliberative session to discuss Appellant= s application. The ZBA voted to continue the deliberative session at its next meeting on September 9, 2002. At the September 9, 2002 meeting, the ZBA voted to deny Appellant= s request for a variance. The ZBA approved a written decision and it was signed by the ZBA Chair on September 23, 2002, but the Clerk of the ZBA failed to send out the approved written decision to Appellant until eighteen days later, on October 11, 2002, when she discovered it among a pile of papers, endorsed it with the October 11, 2002 date, and immediately mailed it to Appellant.

The ZBA rendered a timely decision under 24 V.S.A. ' 4470(a) on September 9, 2002, when it voted to deny Appellant= s request for a variance. Its written decision approved and signed on September 23, 2002 was also timely under ' 4470(a). The only question is whether the clerk= s failure to send it out until 18 days later, approximately two weeks after the expiration of the 45-day time period, should result in deemed approval of the variance. It should not. As in Leo= s Motors, Inc. v. Town of Manchester, 158 Vt. 561, 564 (1992), the defect in the ZBA= s action was in not sending the written notice in a timely fashion to the landowner. The circumstances of this case do not reflect any ZBA indecision or protracted deliberations for which the remedy of deemed approval would be appropriate. See, e.g., Appeal of Newton Enterprises, 167 Vt. 459, 465 (1998); Appeal of Ashline, 14 Vt. L. Week 114 (March 28, 2003).

The ZBA= s decision includes findings of fact. Even if these findings were insufficient to support the ZBA= s variance denial decision, that insufficiency would not result in a deemed approval of the application. Rather, in an appeal in which the ZBA= s conclusions on the variance criteria were contested, the Court would consider the evidence de novo as to whether the application met the criteria for a variance. In an extreme case, if there are no findings of fact at all, a case can be remanded to a municipal board for it to render a decision with adequate findings. But if a timely decision was made, however inadequate the findings, the deemed approval remedy would not be available.

The terms > stream,= > streambank,= and > watercourse= are sufficiently defined in the Zoning Regulations to allow the ZBA or this Court to determine whether a watercourse on any particular applicant= s property triggers the setback requirements of ' IX(L)(1). Even if they were not sufficiently well-defined, that lack would not result in a deemed approval of a variance

application. We note that in the present case, the parties have not provided the Court with undisputed facts about whether the watercourse on Appellant= s land is two feet or more below the elevation of surrounding land, with a bed and a well-defined bank. Assuming that it is a well-defined watercourse but that water only runs in it on a seasonal basis, it meets the definitions in the regulations to trigger the setback requirements of ' IX(L)(1), as nothing in the text or the logic of any of the regulatory sections exempts seasonal streams or watercourses. More importantly for this appeal, however, Appellant did not challenge the determination that ' IX(L)(1) is applicable to his property. Rather, he applied for a variance from that provision. All that was before the ZBA was whether his application met all five requirements for the issuance of a variance, not whether the seasonal stream qualifies as a watercourse under that definition.

Thus, as restated under the heading of Question 4, the answers to the first three questions of Appellant= s Statement of Questions do not result in the so-called deemed approval of Appellant= s application under 24 V.S.A. ' 4470(a).

With regard to Question 5, Appellant did not apply to the ZBA for approval of his new camp under ' IX(H)(1) as a replacement of a pre-existing structure which had a septic system installed prior to the adoption of > Septic Regulations= in the Town, and therefore that question was not before the ZBA and is not before the Court. However, we note that all that could have been replaced under that theory would have been a sugar house. Appellant= s replacement of a sugar house with a structure for human habitation required the new structure to meet ' IX(L). Appellant would have to have shown that the prior structure had been used for human habitation at the time that ' IX(L) was adopted, in order for it to qualify for treatment as a pre-existing nonconforming structure or use. Moreover, even if the sugar house had a pre-existing septic system that predated the Town= s <u>septic</u> regulations and might be grandfathered with respect to ' IX(K), it would still be subject to ' IX(L) unless it predated the <u>zoning</u> regulations= adoption of ' IX(L).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant= s Motion for Summary Judgment is DENIED and the Town= s Motion for Summary Judgment is GRANTED, concluding this appeal.

Done at Barre, Vermont, this 22nd day of May, 2003.

_____
Merideth Wright
Environmental Judge

**Footnotes**

[1] Appellant's Question 5 only asserts that the septic system was installed prior to the adoption of municipal septic regulations, not that it existed prior to the adoption of the zoning regulations. Although the date of the installation of the septic system may be disputed, or at least has not been provided to the Court, that fact is not material to this appeal, for the reasons discussed below regarding Question 5.